UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

JAMES BARRY MURPHY,                    )
                                       )
        Plaintiff,                     )         Civil No. 6:25-cv-00200-GFVT
                                       )
v.                                     )
                                       )         **MEMORANDUM OPINION**
ANTHONY TONY MCCULLOUGH, *et al.*,     )                **&**
                                       )              **ORDER**
        Defendants.                    )

*** *** *** ***

Plaintiff James Barry Murphy has filed a *pro se* civil rights complaint, *see* [R. 1], and the

Court granted his motion to proceed *in forma pauperis* by prior Order, *see* [R. 4].  The Court

must review the complaint prior to service of process, and dismiss any claim that is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from

a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; *Hill v. Lappin*,

630 F. 3d 468, 470-71 (6th Cir. 2010).  At this stage of the case, the Court accepts all non-

conclusory factual allegations in the complaint as true and liberally construes its legal claims in

the plaintiff's favor.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Murphy's allegations relate to events beginning in June 2025 when he was confined as a

pretrial detainee at the Pulaski County Detention Center ("PCDC").  *See* [R. 1 at 1.]  Murphy

indicates that he must use a walker or wheelchair, and asserts that he is "disabled" within the

meaning of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, because

he has Chronic Obstructive Pulmonary Disease, asthma, diabetes, high blood pressure, arthritis

in his lower extremities, and is blind in his left eye.  *See id*. at 2-3.

Murphy indicates that when he was booked into PCDC, Corporal James B. Clark initially placed him in an overcrowded cell with more than ten inmates.  Shortly thereafter, however, Murphy was transferred to a space previously used as a visiting booth, where he was housed for two days.  Murphy complains that the booth did not have either a bathroom or running water, and that he was given only a mat and a blanket with which to sleep.  *See id*. at 3.  After that, staff moved him into a converted gymnasium which housed 35 inmates.  There, Murphy indicates that he slept on the floor, which was uncomfortable, and that generally speaking the jail was overcrowded.  *See* [R. 1 at 4.]  Murphy further states that approximately two and one-half months later - in approximately August 2025 - Sergeant Boyd and/or Corporal Riggs moved him to the segregation unit for thirty days after he swore at a woman.  *See* [R. 1 at 3, 5.][1]  Murphy complains that for the first 18 days of that period, he was not given a mat, blanket, or sheets for the night, and that during the day he was effectively "forced to lay on steel."  *See id*.

Murphy states that he told medical staff at the jail that he was suffering from gall bladder failure, hernias, and bloody stools.  [R. 1 at 7.]  Murphy alleges that three surgeons told him that he needs surgery for one or more of these ailments, but that the jail health care staff instead provided him with colonoscopy flushes, a special diet, and laxatives.  *See id*. at. 5.  Murphy indicates that the provided treatment solved "about 2/3 of the problem."  Murphy separately complains that the jail charges excessive amounts of money to see the nurse and for over-the-counter medications, and that staff did not obtain all of his prior medical records.  *See id*. at 5-6.  Murphy indicates that he does not know the names of the health care providers and lists them only as "unknown medical co. & all staff."  *See* [R. 1 at 1, 6.]

---

[1]  Murphy indicates that other officers were involved, but he does not name them as defendants.

Finally, Murphy alleges that he was not permitted to purchase hygiene items, pens, paper, or envelopes, which he claims is a due process violation and prevents access to courts. [R. 1 at 5.] Murphy states that he filed several grievances about his concerns, but complains that they were always denied and he was not allowed to appeal, a practice he contends violates the Prison Litigation Reform Act ("PLRA"). *See* [R. 1 at 4.] Murphy claims that this conduct collectively amounted to cruel and unusual punishment and deliberate indifference to his medical needs in violation of the Eighth Amendment, a violation of his right to due process and to access the courts, a "failure to protect," and a violation of the ADA. He seeks compensatory damages. *See* [R. 1 at 7, 11.]

The Court has thoroughly reviewed the complaint, but concludes that the claims within it must be dismissed. First, Murphy names as defendants a "Sgt. Carli" and Anthony Tony McCullough, the PCDC's Jailer. However, Murphy makes no allegations at all against either person. He therefore fails to state a viable claim against these defendants. *See Sampson v. Garrett*, 917 F. 3d 880, 882 (6th Cir. 2019) ("[e]ven a pro se prisoner must link his allegations to material facts … and indicate what each defendant did to violate his rights …"). And McCullough cannot be held liable for alleged misconduct by his subordinates merely because he is the Jailer. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Helphenstine v. Lewis County*, 60 F.4th 305, 321 (6th Cir. 2023).

Murphy's allegations regarding overcrowding and uncomfortable cell conditions likewise fail to state a viable constitutional claim. Because Murphy indicates that he was a pretrial detainee at the time of the events in question, his claims are analyzed under the Fourteenth Amendment, not the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021). Regardless, while the Constitution

forbids inhumane conditions, it "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349-50 (1981). Murphy's allegations, even liberally construed, do not suggest that the overcrowding and discomfort he experienced crossed that threshold. *Cf. Faiola v. Cnty. of Mahoning*, No. 4:23-CV-1854, 2024 WL 1909126, at *2 (N.D. Ohio May 1, 2024) (dismissing complaint notwithstanding general complaints of understaffing and overcrowding where plaintiff did not allege that such conditions led to his deprivation of essential food, medical care, sanitation, or other necessities); *Jenkins v. Dillion*, No. 4:24-CV-P69-JHM, 2024 WL 4447231, at *3 (W.D. Ky. Oct. 8, 2024) ("Simply having to sleep on the floor does not violate the Constitution."); *Bartlett v. Woosley*, No. 4:22CV-P158-JHM, 2023 WL 4306911, at *3 (W.D. Ky. June 30, 2023) ("Plaintiff's allegation that he was housed in an overcrowded cell and required to sleep on the floor is not a deprivation of the minimal civilized measure of life's necessities.").[2]

Murphy's claims regarding his medical care must be dismissed for two reasons. First, while he complains that the medical staff provided different care than that allegedly recommended by outside doctors, a difference in medical opinion about the kinds of treatment a prisoner needs does not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004). Thus, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). *See also*

---

[2] Further, federal law provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C.A. § 1997e(e). Murphy does not allege that he suffered any physical injury as required to satisfy this statutory requirement.

*Rhinehart v. Scutt*, 894 F.3d 721, 744 (6th Cir. 2018) (finding that prison doctor who monitored and treated inmate's condition in lieu of following outside physician's recommendation of referral to a specialist did not evidence "conscious disregard for Rhinehart's condition," but merely a difference of medical opinion).  Second, Murphy has not named as defendants any of the healthcare providers who were responsible for and participated in his medical care, instead naming only "unknown medical co. & all staff."  *See* [R. 1 at 1.]  Having failed to identify any viable defendant, this claim must be dismissed.

Murphy's miscellaneous complaints also fail to provide any basis for relief.  His allegation that he was unable to purchase pens, paper, or envelopes is insufficient to state a viable claim that he was prevented from accessing the courts because he alleges no injury to a specifically-identified and non-frivolous legal claim.  *See Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (adequate pleading of access-to-courts claim requires allegation of actual injury to specific claim, allegation of the facts and the law in the underlying claim, and demonstration that underlying claim was non-frivolous) (*citing Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).  Murphy's complaint that his grievances were always denied and that he was not allowed to appeal does not violate the PLRA or the Constitution.  Neither the statute itself nor any constitutional provision require a jail or prison to maintain a grievance process at all, let alone that it operate in an effective or workable manner.  *See Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure.") (*citing Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

Lastly, Murphy's claims under the ADA fail for two reasons.  At most, he expresses only disagreement with his medical care, not purposeful disability-based discrimination, so he states no claim under the ADA. *Moore v. Diggins*, 633 F. App'x 672, 677 (10th Cir. 2015) (noting that

5

"purely medical decisions do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.") (cleaned up); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Centaurs may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."). More fundamentally, the ADA only proscribes discrimination by public entities, such as a state or local government or agency. *See* 42 U.S.C. § 12131(1). It does not apply to individuals, the only defendants named in this case. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Title II of the ADA does not, however, provide for suit against a public official acting in his individual capacity.") (*citing Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) (holding that "the ADA does not provide for personal liability for defendants sued in their individual capacities.")).

For each of these reasons, the Court will dismiss the complaint for failure to state a claim.

Accordingly, it is **ORDERED** as follows:

1.      The Complaint **[R. 1]** is **DISMISSED**.

2.      This matter is **STRICKEN** from the active docket.

This the 8th day of June 2026.

Gregory F. Van Tatenhove
United States District Judge

6